**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

TERENCE A.W. GREEN, JR.,

Plaintiff,

v.

THE WARDEN ROBERT DEAN, et al.,

Defendants.

Civil Action No.: JKB-23-1289

**MEMORANDUM OPINION**

Defendants Warden Robert Dean, Lt. Justus Ukwu, Correctional Officer Franka Ngu, and Sgt. Stanley Akinbisehin[1] move to dismiss Plaintiff Terence A. W. Green Jr.,'s complaint, or alternatively, for summary judgment in their favor. (ECF No. 18.) Green filed opposition responses. (ECF No. 21, 26,[2] 27, 28.) No hearing is necessary to determine the matters pending. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated below, Defendants' Motion, construed as a motion to dismiss, will be denied, and Defendants will be directed to file an answer.

---

1 The Clerk shall amend the docket to reflect the full and complete names of Defendants.

2 To the extent Green raises new allegations regarding his being housed on administrative segregation status pending transfer, those claims are not properly before the court and will not be considered in the context of this case. (ECF No. 26 at 1; *see also* ECF No. 29 (correspondence filed June 26, 2024, stating Green continues to be housed on administrative segregation pending transfer and his unable to earn money).) *See Mylan Laboratories, Inc. v. Akzo, N. V.,*770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)), *aff'd,* 2 F.3d 56 (4th Cir. 1993); *see also Zachair Ltd. v. Driggs,* 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd,* 141 F.3d 1162 (4th Cir. 1998). *Woodbury v. Victory Van Lines*, 286 F.Supp.3d 685, 692 (D. Md. 2017) (stating it is axiomatic that a plaintiff may not use their memorandum in opposition to amend the complaint).

## I. Procedural and Factual Background

### A. Procedural history

Self-represented Plaintiff Terence A.W. Green, Jr.'s filed this civil rights case alleging excessive force on May 15, 2023. (ECF No. 1.) Defendants filed a Motion to Dismiss or in the Alternative for Summary Judgment on December 5, 2023. (ECF No. 18.) Defendants attached as an exhibit to their dispositive motion a video of the use of force (ECF No. 18-4) and indicated arrangements would be made for Plaintiff to view the video (ECF No. 18-1 at 2 n.1). In his opposition response, Plaintiff stated that he had not been able to view the video. (ECF Nos. 21, 26.) Accordingly, Defendants were directed to arrange for Plaintiff to view the video evidence and to then certify to the Court when that happened. (ECF No. 24.) Plaintiff was granted 28 days after he viewed the video to file any additional opposition response to Defendants' dispositive motion. (*Id.*) On March 15, 2024, Defendants certified that Plaintiff viewed the video that day. (ECF No. 25. ) On March 21, 2024, Plaintiff filed an additional opposition response indicating he reviewed the video evidence and that it did not contain audio, so the insults and threats directed toward him were not recorded. (ECF No. 27 at 1.) Additionally, Green noted that there is additional surveillance video that has not been provided to the Court that is relevant to the claims asserted (*id.* at 1–2; ECF No. 28) and that the video submitted was edited. (ECF No. 28 at 1–2.) He asserts that without the full videos, the events at issue cannot be properly assessed. (ECF Nos. 27, 28.)

### B. Green's Allegations

Green alleges that he was assaulted by correctional officers at the Jessup Correctional Institution ("JCI") on June 10, 2022. (ECF No. 1 at 2.) He explains that on that date, he advised Officer Ngu that he had missed his time to eat and requested permission to go to the dayroom to cook his food. (*Id.*) The officer did not grant such permission and Green objected, saying it was

a violation of his rights to force him to miss a meal. (*Id.*) Ngu directed Green to go to his cell. (*Id.*)

Lt. Ukwu then came on the tier and Green asked Ukwu for permission to heat up his food in the dayroom. (*Id.*) "Lt. Ukwu completely understood w[h]ere [Green] was coming from; He even patted [Green] down and allowed [him] to enter the day room." (*Id.* at 3.) Green began to heat up his food when Ukwu yelled at Green to leave the day room immediately or he would issue Green an infraction. (*Id.*) Green complied but also sought to clarify why the permission to heat his food was rescinded. (*Id.*) Green states that he complied with the directive to lock in his cell, and also asked why the permission was withdrawn, asserted his rights were violated by not being provided a meal, and asked to speak to a captain. (*Id.*)

Ukwu, Ngu, and other officers surrounded Green, "as if they were ready to attack [him.]" Ukwu again directed Green into his cell and Ukwu called to the control unit to have Green's cell door opened so that he could lock in. (*Id.*) Green stepped into his cell, again stating that he wanted to see the captain. (*Id.*) An unidentified officer stepped into the cell behind Green. (*Id.*) Green asked Ukwu why the officer was in his cell. The unidentified officer then grabbed Green and "twisted [his] wrist from behind." (*Id.*) Green states that he was afraid, suffers from PTSD, and that when the officer grabbed him in his cell he "went into self-defense mode." (*Id.*)

Green further alleges that after he was handcuffed the officers assaulted him by stepping and kneeling on his neck and back. (*Id.* at 4.) He believes that they were trying to break his neck. (*Id.*) Ukwu stepped and stood on top of Green while he was fully restrained. (*Id.*) Ukwu also sprayed pepper spray on Green despite Green stating that he suffers from asthma and could not breathe. (*Id.*) Ukwu dispensed the entire can of pepper spray while stating "die bitch die." (*Id.*) While the pepper spray was dispensed, the other unidentified officers continued to step and kneel

on Green's neck and back, keeping him pinned to the ground. (*Id.*) Green states that the handcuffs were "extremely tight." (*Id.*)

After the altercation, Green was taken to medical. (*Id.*) He requested that the handcuffs be loosened, he be provided milk for his eyes, and reported that he had difficulty breathing. (*Id.* at 4.) The officers "stood around cracking jokes and laughing claiming they had no milk or a cuff key." (*Id.*) When Green asked how that was possible, an unidentified officer responded, "that's what you get for fighting an officer." (*Id.*)

After approximately 30 to 45 minutes, milk and a cuff key were located. (*Id.* at 5.) Green was taken into the bathroom, while he remained handcuffed, and was permitted to pour the milk into his eyes. (*Id.* at 5.) Green still had difficulty breathing. (*Id.*) While attempting to rinse his eyes, several officers "rushed into the bathroom pulled [Green's] pants down to [his] ankles [and] began fondling and [] playing with [Green's] penis and [his] balls trying to get [Green] to attack them." (*Id.*) Green asked to use the phone so that he could report the incident, but they denied his request. (*Id.*) After he completed 30 days on lock up, where he did not have access to a phone, he was advised he could no longer make a complaint regarding the sexual assault in the bathroom. (*Id.*)

When Green was taken to segregation, he advised an officer that he still had pepper spray in his eyes, nose, and over his entire body and requested a shower. (*Id.*) Sgt. Akinbisehin directed the tier officer not to give Green a shower, despite knowing that Green still had pepper spray on him. (*Id.*) Akinbisehin stated that it was the other shifts job to provide the shower and he was not going to do their job. (*Id.*) From June 10, 2022, at approximately 6 to 7 p.m. to June 11, 2022 at approximately 9 to 10 a.m., Green was denied a shower while the pepper spray remained in his eyes and nose and on his body. (*Id.*) When he was permitted to take a shower the shower was "scorching hot" so that he could not stand under it. (*Id.*)

As a result of the incident Green suffered injuries which have worsened over time. (*Id.* at 5–6.) He has no feeling in his left hand from the middle finger to the pinky finger due to having the handcuffs applied too tightly for too long. (*Id.* at 6.) He suffered blurry vision in his right eye for several months and now wears glasses. (*Id.*) He suffers extreme pain in his neck and back. (*Id.*) As a result of the altercation and chemical agent exposure, Green states that he now cannot do all of the things he used to be able to do and has to take medication for his injuries. (*Id.* at 6.)

Green asserts that "[t]he ones who really is responsible is the correctional officers and nurse for showing no care regards for my injuries which leave The Warden Robert Dean responsible because I brought to his attention in my administrative complaint well over several different times that all went un-answered." (*Id.* at 7.) Green states that he spoke to Warden Dean about his being harassed and not receiving adequate medical care but that Dean took no action. (*Id.*)

Green also alleges that he believed that Defendants would respond to his complaint by falsely alleging that he refused housing, refused to leave the dayroom as directed, and/or lied about missing his meal. (*Id.* at 9.) Green states that if Defendants make such claims, they should be required to produce video from the surveillance cameras at JCI on June 10, 2022 from D-Building A-tier, medical, and lock up, where the events complained of occurred. (*Id.* at 9.)

Greens seeks compensatory damages. (*Id.* at 12.) He attached copies of the administrative grievances he filed regarding the assault and lack of medical care. (ECF No. 1-1.) He claims that his administrative complaints went unanswered. (ECF No. 1 at 5–6.) Green also filed portion of his medical records. (ECF No. 3-1; ECF No. 8-1.)

In a letter later filed with the Court, Green states that at the time of the incident he was "not sentence[d] or sanction[ed] but was waiting on a technical parole violation hearing." (ECF No. 14 at 1.) He asserts that, because of the altercation, he lives in fear that he will be assaulted by correctional staff. (ECF No. 14 at 2.)

In his response in opposition to the Defendants' Motion, (ECF No. 21), he asserts that Defendants did not submit the entire video footage from the beginning to the end of the incident, which he asserts would show his movements in and out of his cell which are relevant to his interaction with staff. (*Id.* at 2.) In this opposition, he had not been given an opportunity to review the video presented to the Court. Green also disputed factual statements included in Lt. Ukwu and Sgt. Folurunso's affidavits. (*Id.* at 4.) He again asked that Defendants be required to produce the entire video and/or he be given time to find legal counsel. (*Id.* at 5.)

Green, in a letter to the Court, also explains that he was found not guilty on a ticket. (ECF No. 26.) He does not explain whether the ticket referenced was issued as a result of the events complained of in this case or for something else. He expresses his belief that he is being harassed. (*Id.*)

In his supplemental opposition response filed after reviewing the video, (ECF No. 27), Green notes that the video is without audio and as such does not evidence the insults and threats directed toward him. (*Id.* at 1.) Green also again claims that Defendants have withheld other surveillance video footage and that Officers Ukwu, Adelo, and Ngu lied in their incident reports written after the altercation on the tier. (*Id.* at 1–2.)

### C. Defendants' Response

With their Motion—which was styled as a motion to dismiss or, in the alternative for summary judgment—Defendants submit various pieces of evidence. However, because the Court will construe the Motion as a motion to dismiss, the Court does not consider these documents except as noted below.

## II. Standard of Review

Defendants' Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. (*See* ECF No. 18-1.) Motions

styled in this manner implicate a court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). However, such conversion is generally "not appropriate where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citing *Gay v. Wall*, 761 F.2d 175, 178 (4th Cir. 1985)). The Court has determined in its discretion to evaluate Defendants' Motion pursuant to Rule 12(b)(6). The Court has so determined given the lack of opportunity for discovery and Green's assertions that he has not obtained the necessary discovery.

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). In reviewing the pending Motion, the Court is mindful that Green is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them

to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**III. Discussion**

Defendants seek the dismissal of Green's Complaint on various bases: (1) Green's failure to exhaust administrative remedies; (2) Green's failure to state an Eighth Amendment claim for denial of medical care; (3) there is no respondeat superior liability; (4) qualified immunity precludes liability; and (5) Defendants are entitled to dismissal of official capacity claims based on Eleventh Amendment immunity. (*See generally* ECF No. 18-1.)

**A. Exhaustion of Administrative Remedies**

Defendants assert that Green's Complaint should be dismissed because he failed to exhaust the required grievance process. (ECF No. 18-1 at 11–13.) If Green's claims were not properly presented through the Administrative Remedy Procedure ("ARP"), they must be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). The Court may dismiss a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

Although the PLRA requires the prisoner to exhaust available remedies, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. Critically, the Fourth Circuit has held that "when there is an Intelligence and Investigative Division [("IID")] investigation into an

officer's use of force, Maryland's scheme for administrative remedies is unavailable." *Younger v. Crowder*, 79 F.4th 373, 381 (4th Cir. 2023). Defendants provide a Declaration from Britt Brengle, Administrator and Custodian of Records[3] for the Department of Public Safety and Correctional Services ("DPSCS"), IID, which certifies the records created by IID regarding the June 10, 2022 use of force incident on the tier. ECF No. 18-3; *see also Crowder*, 79 F.4th 380 ("Under Maryland law, an inmate cannot successfully file an administrative grievance over an event that is the subject of an Intelligence and Investigative Division investigation. If they do, that grievance will automatically be dismissed as procedurally deficient."); *see also Sheppard v. Parson*, Civ. No. PX-21-1342, 2024 WL 943436, at *3 (D. Md. Mar. 4, 2024) ("Because [plaintiff's] ARP was procedurally dismissed while the IID investigation was pending, administrative remedies were unavailable to him. The Court will not grant judgment in Defendants' favor on exhaustion grounds."). Given the IID investigation, the Court cannot say on the record before it that the administrative grievance process was available to Green regarding the events at issue.

Additionally, while Defendants agree that Green filed an ARP with the Warden on June 11, 2022, (ECF 1-1 at 1–2), they assert, however, that while the ARP was timely it was only in regard to the failure to wash the pepper spray from his eyes and failure to loosen the handcuffs when he arrived at medical. (*Id.*) The Court disagrees. The June 11, 2022 ARP stated that Green was "followed to [his] cell n/attacked by correctional officers. . . ." (*Id.* at 1.) He claimed that

---

[3] The Court will consider these documents, because they are integral to the Complaint—as Green references the exhaustion of his administrative remedies in his Complaint—and their authenticity is not disputed. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *see also King v. Nines*, Civ. No. DLB-21-1627, 2022 WL 4368150, at *4 (D. Md. Sept. 21, 2022) (explaining that "[b]ecause the [ARP] appeal and administrative dismissal are relied on in the complaint, integral to it, and the authenticity of the ARP appeal and dismissal order is not disputed, the Court may consider them in resolving [the defendant's] motion without converting it into a summary judgment motion").

"officers stomped, stepped, n/kneed [him]." (*Id.* at 2.) The institutional ARP coordinator acknowledged receipt of the ARP "in regard to: assaulted by staff." (*Id.*) The ARP also included Green's complaints that he was not treated timely in the medical unit, his handcuffs were too tight, and that when he was taken to segregation housing he was refused a shower until the following day, and the shower was too hot. (*Id.* at 2.) Green's subsequent ARPs focused solely on the failure to provide adequate medical care. (*Id.* at 3–9, 12–13.)

Defendants further contend that Green's allegations that Defendants sexually assaulted him in the bathroom while he was rinsing his eyes was not included in an ARP and is therefore "a tacit admission that there was no cause for complaint." (ECF No. 18-1 at 12.) While Green did not file an ARP regarding the sexual assault in the bathroom, Green asserts that he was prevented from filing an administrative complaint regarding this altercation because he was denied the ability to file a complaint regarding this assault close in time to its occurrence and that, once he was released from segregation confinement, the time had passed for him to file the complaint. In short, Green alleges that Defendants prevented him from asserting this claim at the administrative level. Where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" the administrative process is not available. *Ross v. Blake*, 578 U.S. 632, 644 (2016). Defendants do not dispute Green's assertion regarding his inability to file a Complaint regarding the sexual assault.

The Court will not dismiss Green's claims on the basis of a failure to exhaust administrative remedies.

**B. Denial of Medical Care**

Defendants also assert that Green's Complaint should be dismissed because he fails to state a claim for denial of medical care. (ECF No. 18-1 at 10–11.) The Eighth Amendment to the United States Constitution proscribes "unnecessary and wanton infliction of pain" by virtue of its

guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). Generally, the amendment protects inmates against "inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *see also Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (citation omitted). This includes protection against the use of excessive force.

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (quoting *Iko*, 535 F.3d at 241).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious

medical condition. *See Farmer*, 511 U.S. at 839–40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Green asserts that after he was taken to the medical unit, correctional staff prevented his treatment by claiming they did not have access to a handcuff key or eye wash. While he requested to wash his eyes and to have his handcuffs loosened, correctional staff taunted him, declined to render aid, and admonished him that this was what he got for assaulting staff. He also alleges that once he was taken to segregation housing, he was denied a shower to wash off the remaining chemical agent until the following day. This is sufficient to allege an Eighth Amendment claim at this stage of the litigation.

### C. Respondeat Superior Liability

Defendants assert that Warden Dean cannot be held liable because there is no respondeat superior liability. (ECF No. 18-1 at 7-8.) In a suit arising under 42 U.S.C. § 1983, the doctrine of respondeat superior generally does not apply and liability attaches only upon a defendant's

personal participation in the constitutional violation. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). The Court agrees. The Complaint is dismissed as to Warden Dean.

**D. Qualified Immunity**

Defendants assert in a cursory manner that they are entitled to qualified immunity from liability because they did not violate Green's constitutional rights. (ECF No. 18-1 at 13-14.) They argue that their conduct was justified to regain control of Green and within the scope of their duties. (*Id.* at 14.) Under qualified immunity, "a corrections officer who 'has violated a prisoner's constitutional right' is 'shielded from liability . . . if an objectively reasonable officer could have believed that his actions were lawful in light of clearly established law." *Dean v. Jones*, 984 F.3d 295, 309-310 (4th Cir. 2021) (citations omitted).

The constitutional right to be free from unnecessary use of force while restrained or not resisting was clearly established before the events in question occurred in June 2022, as was the right to adequate medical care. *See Whitley*, 475 U.S. at 319 (holding that the Eighth Amendment forbids the unnecessary and wanton infliction of pain on a prisoner); *Hudson,* 503 U.S. at 9–10 (holding that correctional officers violated the Eighth Amendment when they beat an inmate while he was handcuffed and shackled, even though injuries, which included bruises, swelling and loosened teeth, were "minor" and did not require medical attention); *Farmer*, 511 U.S. at 834–37 (describing constitutionally adequate medical care). Further, Defendants do not address qualified immunity in regard to the sexual assault or alleged denial of immediate medical care or a shower. Instead they argue that they did not violate Green's constitutional rights during the initial altercation because they used limited force to regain control but such an assessment concerns factual disputes not properly resolved in considering a motion to dismiss. The Court will therefore deny the Motion on the issue of qualified immunity.

**D. Eleventh Amendment Immunity**

Defendants also assert that they are entitled to immunity from official capacity claims under the Eleventh Amendment. (ECF No. 18-1 at 6–7.) Green does not specifically state whether he brings his claims against Defendants in their individual or official capacity, or both, and while Defendants note this lack of specificity, they do not fully address it. (*Id.* at 7).

"When a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). As the Fourth Circuit has explained that in determining whether suit has been brought personally:

> One factor indicating that suit has been filed in such a manner might be the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint. Another indication that suit has been brought against a state actor personally may be a plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits. The nature of any defenses raised in response to the complaint is an additional relevant factor. Because qualified immunity is available only in a personal capacity suit, the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally. Throughout, the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly.

*Id.* Green does not allege that the defendants' actions were the policy or practice of the State or their agencies, and he seeks compensatory and punitive damages. Therefore, the Court finds that Green brings suit against the Defendants in their personal capacities. As such, the Court concludes that Green's claims cannot be dismissed on the basis of Eleventh Amendment immunity.

**IV. Conclusion**

Defendants' Motion will be denied and Defendants will be directed to file an answer. A separate Order follows.

Dated this 28 day of August, 2024.

FOR THE COURT:

James K. Bredar
United States District Judge